# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DARYL EDWARD SMITH,

      Petitioner,                   Case Number 2:17-CV-13837
                                        HONORABLE GERSHWIN A DRAIN
v.                                    UNITED STATES DISTRICT JUDGE

BONITA HOFFNER,

      Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Daryl Edward Smith, ("petitioner"), confined at the Carson City Correctional Facility in Carson City, Michigan, filed a petition for writ of habeas corpus with this Court pursuant to 28 U.S.C. § 2254, challenging his conviction of possession with intent to deliver 450 grams or more, but less than 1,000 grams of cocaine, MICH. COMP. LAWS § 333.7401(2)(a)(ii). For the reasons that follow, the petition for writ of habeas corpus is DENIED.

## I. BACKGROUND

Petitioner was convicted following a jury trial in the Genesee County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan

Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> The search and seizure in this case was based on a multijurisdictional drug enforcement unit's, the Flint Area Narcotics Group (FANG), investigating an anonymous tip. Michigan State Police Lieutenant David Rampy testified that he had received a telephone tip on August 14, 2009 with respect to a black male, bald with glasses, driving a black possibly Ford Fusion traveling northbound on I–75, with cocaine in the vehicle. Rampy described that twice before August 14, 2009, at two-week intervals, he had received identical tips; FANG members undertook unsuccessful surveillance activities on each prior occasion.

> William Renye, a Grand Blanc Township police officer and member of FANG testified that on the day of the stop, he had received information about an anonymous tip of a black Ford vehicle driving northbound I–75 that was occupied by a black male, having a bald head in his 40's wearing glasses that would be in route to the Flint area with a lot of cocaine. Kenneth Shingleton testified that he worked as a Michigan State Police trooper and had assisted FANG in a traffic stop of defendant. He had heard the radio traffic regarding the anonymous tip and that another officer had observed a vehicle matching the tip description traveling northbound on I–75 and being driven by a black male with glasses and a bald head. Trooper Shingleton observed the suspect vehicle being driven at 80 miles per hour in a 70–mile–per–hour zone and saw defendant's car twice change lanes without signaling. Shingleton requested by radio that a marked police car stop the suspect car. Rampy also testified that he saw the car and driver matching the tip's description heading north on I–75 and "paced" it at approximately 75 miles per hour in a 70–mile–per–hour speed zone.

> Michigan State Police trooper Steven Skrbec testified that he stopped defendant's car on August 14, 2009, on the basis of FANG team member reports that the car had improperly changed lanes and was speeding. Skrbec testified that defendant cooperatively provided his

driver's license, but would not consent to a search of the car. Grand Blanc Township police sergeant Matthew Simpson testified regarding his expertise as a canine officer searching for drugs and that he went to the a [sic] traffic stop of defendant after hearing a radio call for canine assistance. Simpson testified it took him 10 minutes to arrive with his dog after hearing the radio request. Shingleton testified it took between 15 and 20 minutes from initiating the traffic stop to the arrival of the police dog; Renye thought the drug dog arrived around 15 minutes after the beginning of the stop; Rampy estimated that it took between 20 and 25 minutes for the canine officer to arrive. Defendant estimated that around 10 minutes elapsed between the commencement of the traffic stop and the call for canine assistance, and then another 10 minutes elapsed before the canine officer arrived.

Simpson testified his dog circled the black Fusion and on reaching the driver's side of the car the dog gave a positive alert, biting the handle on the rear door. Simpson testified this action signaled the presence of marijuana, methamphetamines, heroin or cocaine in that area of the car. Shingleton testified that within one to three minutes the police dog began biting and scratching at a driver's-side door handle, which prompted officers to search the black Fusion. On opening the trunk, Shingleton observed a yellow plastic bag near the spare tire. Flint Police officer Scott Watson assisted Shingleton and also described finding yellow plastic baggie containing white powder in the trunk of the Fusion.

Defendant testified that Watson told him that the police pulled him over because he had a Detroit license plate and that "guys come from Detroit all the time carrying large amounts of cocaine." Defendant also testified that when he asked why he was stopped, Renye said that "we been following you since Grand Blanc, so speeding, changing lanes, pick something."

The trial court denied the motion to suppress, finding that the police had articulable suspicion that criminal activity was afoot which justified the stop. Specifically, that the police corroborated the tip information that (1) a black Ford Fusion auto would be travelling (2) northbound on (3) I–75 carrying cocaine and driven by (4) a black

male (5) who was bald and (6) wearing glasses (7) on August 14, 2009. The court further determined that the time elapsed from the traffic stop to conducting the search with the dog was not unreasonable.

\* \* \*

After other officers found the apparent cocaine inside the black Fusion, Officer Renye arrested defendant and advised him of his *Miranda* rights. Renye testified that defendant acknowledged his rights, waived them and stated that "the cocaine [in the black Fusion] was his"; the cocaine and packaging weighed 501 grams; he bought the cocaine in Detroit and paid $12,000 for it; and that he intended to sell the cocaine for $16,000 in Flint.

At trial, an expert in latent fingerprint print examination testified that a latent fingerprint on a Ziploc bag recovered from the black Fusion's trunk and concluded that the print matched defendant's right middle fingerprint. An expert chemical analyst testified that the 490.9 grams of the substance he tested contained cocaine. Officer Watson testified that in his training and experience the 490–gram quantity of cocaine that was seized was meant for delivery.

*People v. Smith*, No. 305437, 2013 WL 5857567, at \*1–2, 8 (Mich. Ct. App. Oct. 31, 2013) (internal footnote omitted). Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 496 Mich. 857, 847 N.W. 2d 618 (2014).

Petitioner filed a post-conviction motion for relief from judgment, which the trial court denied. *People v. Smith,* No. 10-027124-FH (Genesee Cty.Cir.Ct., Feb. 16, 2016). The Michigan appellate courts denied petitioner leave to appeal. *People v. Smith,* No. 331910 (Mich.Ct.App. July 25, 2016); *lv. den.* 500 Mich. 947, 890 N.W. 2d 357 (2017).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.      The Michigan Supreme Court erred when it ruled that the trial court did not commit reversible error when it denied the Defendant's motion for relief from judgment pursuant to MCR 6.508(D)(3)(a) and (b), where Defendant's claims were not procedurally barred, where Defendant's claim of ineffective assistance of counsel was sufficient to establish both cause and prejudice, and where Defendant's claims were clearly meritorious.

II.     The Petitioner was deprived of his liberty and the effective assistance of counsel where counsel was absent during most of the pretrial period which is a critical stage of the trial proceedings and failed to subject the prosecution's case to meaningful adversarial testing in violation of the Sixth Amendment and caused the adversarial process to become tainted and prejudiced, where the errors and deficiencies of counsel individually and cumulatively prejudiced Mr. Smith.

III.    The trial court abused its discretion and violated the Petitioner's Fourteenth Amendment right to due process of law and a fair trial, where the trial court abused its discretion when it denied Petitioner's motion for a continuance where Petitioner filed a motion for self-representation on the morning of trial, and required additional time to prepare his defense in light of counsel's ineffectiveness.

IV.     The Petitioner was denied his Fourteenth Amendment constitutional right to due process of law where the trial clerk committed fraud upon the court where he/she concealed all knowledge and records of Petitioner's April 12, 2011 jury trial proceedings, created a false register of actions sheet, and prohibited the Petitioner and his appellate counsel from being able to effectuate a full and adequate direct appeal of right which severely prejudiced the Petitioner.

V.      Mr. Smith's right of self-representation was violated because he was not present for the objections, arguments or "arrangements" that were made concerning the improper restraints.

VI.     The trial court violated Mr. Smith's state and federal constitutional right to due process of law where he was shackled during trial. A new trial is

warranted because at least one juror was aware of the restraints and the error is inherently prejudicial.

VII.   The trial court erred in denying Mr. Smith's motion to suppress where the investigatory detention was in violation of the Fourth Amendment and where the seizure and subsequent search led to discovery of key prosecution evidence.

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when

"a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

Petitioner's second, third, and fourth claims were denied in part by the trial court on post-conviction review pursuant to M.C.R. 6.508(D)(3), on the ground that petitioner failed to show cause and prejudice for not raising these claims on his direct appeal. Although the state court judge mentioned M.C.R. 6.508(D)(3), the AEDPA's deferential standard of review also applies to the judge's opinion

because he alternatively rejected the claims on the merits. *See Moritz v. Lafler*, 525 F. App'x. 277, 284 (6th Cir. 2013). [1]

## III. DISCUSSION

### A. Claim # 1.  The post-conviction infirmities claim.

Petitioner first argues that the Michigan Supreme Court erred in applying the procedural bar contained in M.C.R. 6.508(D)(3) to deny his post-conviction appeal.  Petitioner argues that the court erred in procedurally defaulting his second, third, and fourth claims because his appellate counsel's ineffectiveness in failing to raise his second, third, and fourth claims on his appeal of right established cause to excuse petitioner's failure to raise these claims.

---

[1] Respondent argues that these claims were not exhausted because he did not raise these individual claims in the headings or statement of questions that he raised in his post-conviction appellate brief before the Michigan appellate courts. Petitioner, however, raised these substantive claims in the body of his appellate court briefs.  This would be sufficient to present these claims to the Michigan appellate courts for exhaustion purposes. *See e.g. Wagner v. Smith,* 581 F.3d 410, 415-16 (6th Cir. 2009). Respondent also argues that these claims are procedurally defaulted because petitioner failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for failing to raise these claims on his appeal of right. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir.2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.  This Court believes that it would be easier to address the merits of the claims in this case.

Petitioner's claim that the Michigan courts wrongfully denied him post-conviction relief is non-cognizable. This Court notes that "[t]he Sixth Circuit consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer,* 484 F. 3d 844, 853 (6th Cir. 2007). Thus, a federal habeas corpus petition cannot be used to mount a challenge to a state's scheme of post-conviction relief. *See Greer v. Mitchell,* 264 F. 3d 663, 681 (6th Cir. 2001). The reason for this is that the states have no constitutional obligation to provide post-conviction remedies. *Id.* (citing to *Pennsylvania v. Finley,* 481 U.S. 551, 557 (1987)). Challenges to state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because "'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody.'" *Kirby v. Dutton*, 794 F. 2d 245, 246 (6th Cir. 1986)(quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

"A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not 'result [in] ... release or a reduction in ... time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention.'" *Cress,* 484 F. 3d at 853 (quoting *Kirby*, 794 F. 2d at 247). Thus, the "'scope of the writ'" does not encompass a "'second tier of complaints about deficiencies in state post-conviction

proceedings.'" *Cress*, 484 F. 3d at 853 (quoting *Kirby*, 794 F. 2d at 248). "[T]he writ is not the proper means to challenge collateral matters as opposed to the underlying state conviction giving rise to the prisoner's incarceration." *Id.* (internal quotations omitted).

To the extent that petitioner is arguing that appellate counsel was ineffective for failing to raise his second, third, and fourth claims on his appeal of right, he would not be entitled to relief. The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). As discussed *infra,* petitioner's second, third and fourth claims are meritless. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d at 676). Because none of petitioner's underlying claims can be shown to be meritorious, appellate counsel was not ineffective in her handling of petitioner's direct appeal.

**B. Claim # 2. The ineffective assistance of trial counsel claim.**

In his second claim, petitioner argues that he was constructively denied the effective assistance of trial counsel during critical stages of the criminal proceedings. Petitioner contends that his first trial counsel constructively denied him his right to counsel by failing to visit him in jail during the pre-trial period. Petitioner also claims that he was denied counsel at a critical stage of the criminal proceedings when the prosecutor was permitted to amend his witness list to add a second fingerprint expert. Petitioner further argues that he was constructively denied the assistance of trial counsel by his first trial counsel's failure to perfect petitioner's interlocutory appeal from the denial of the pre-trial motion to suppress evidence and failing to keep petitioner apprised about the status of the appeal.

A defendant is required to satisfy a two prong test to establish the denial of the effective assistance of counsel. First, the defendant must show that counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant must overcome a strong presumption that his or her attorney's conduct fell within the wide range of reasonable professional assistance. *Id*. Stated differently, the defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such

performance prejudiced his or her defense. *Id.* To demonstrate prejudice, the defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland*

claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "a state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

The U.S. Supreme Court has clearly established that the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice. *United States v. Cronic*, 466 U.S. 648, 659 (1984). The existence of certain structural defects in a trial, such as the deprivation of the right to counsel, requires automatic reversal of the conviction because it infects the entire trial process. *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993). The U.S. Supreme Court has routinely found constitutional error without any specific showing of prejudice to a defendant when counsel is either totally absent, or prevented from assisting the accused during a critical stage of the proceedings. *Cronic*, 466 U.S. at 659, n.25; *United States v. Minsky*, 963 F. 2d 870, 874 (6th Cir. 1992).

In addition, where defense counsel entirely fails to subject the prosecution's case to "meaningful adversarial testing," there has been a constructive denial of counsel, and a defendant need not make a showing of actual prejudice to establish ineffective assistance of counsel. *Moss v. Hofbauer,* 286 F. 3d 851, 860 (6th Cir. 2002)(*quoting Cronic,* 466 U.S. at 659). However, in order for a presumption of

prejudice to arise based on an attorney's failure to test the prosecutor's case, so that reversal based on ineffective assistance of counsel is warranted without any inquiry into prejudice, the attorney's failure to test the prosecutor's case "must be complete." *Bell v. Cone,* 535 U.S. 685, 697 (2002).

Petitioner's original trial counsel, Sheldon Siegel, was appointed to represent petitioner and represented him at the preliminary examination on May 26, 2010 and June 14, 2010. Mr. Siegel also represented petitioner at an evidentiary hearing on counsel's motion to suppress the evidence being the result of an illegal stop on August 13, 19, 25, and 27, 2010. The judge denied the motion to suppress on September 9, 2010. Mr. Siegel attempted to file an interlocutory appeal but the appeal was dismissed without prejudice on November 9, 2010 because counsel's pleadings were defective. *People v. Smith,* No. 300461 (Mich.Ct.App. Nov. 9, 2010).

Petitioner claims that Mr. Siegel did not visit him in jail between October 3, 2010 and April 11, 2011, and failed to keep him apprised of the status of the interlocutory appeal. Petitioner claims that Mr. Siegel visited him in jail on April 11, 2011 and gave him false information as to why the interlocutory appeal had been dismissed.

On April 12, 2011, Mr. Siegel attempted to take petitioner to trial. Petitioner was not ready for trial because Mr. Siegel failed to inform him ahead of time of the trial date. Petitioner did not have clothes to wear for trial so Mr. Siegel retrieved a pair of soiled pants and a soiled sweater from his car for petitioner to wear at trial. After *voir dire* was conducted, petitioner moved to postpone the trial on the ground that Mr. Siegel failed to inform him of the denial of the interlocutory appeal, failed to subpoena witnesses, failed to file a motion to challenge the fingerprint evidence, failed to obtain independent testing of the seized cocaine, failed to provide petitioner with the case law, or failed to notify petitioner's family of the trial date. (Tr. 4/12/11, pp. 44-49). The judge ultimately agreed to postpone the trial until April 20, 2011. (*Id.*, p. at 51).

On April 14, 2011, petitioner filed a motion to dismiss counsel. On May 2, 2011, the court heard the motion and agreed to dismiss Mr. Siegel as trial counsel. At the same hearing, the prosecutor moved to amend the information to add Gary Ginther of the Michigan State Police as a fingerprint expert, which was granted. Petitioner on his own objected to the amendment of the information. (Tr. 5/2/11, pp. 2-8).

On May 5, 2011, the trial judge appointed David Clark as replacement trial counsel and appointed Neil Szabo to re-file the interlocutory appeal.

Petitioner initially argues that his first trial counsel's failure to visit with petitioner in private in the county jail during the pre-trial period between October 3, 2010 and April 11, 2011 amounted to a *per se* denial of the effective assistance of counsel.

In *Mitchell v. Mason*, 325 F. 3d 732 (6th Cir. 2003), the Sixth Circuit held that the Supreme Court's holding in *Cronic* required a presumption of prejudice be applied to the petitioner's ineffective assistance claims. The Sixth Circuit's conclusion was based on the fact that during the entire course of defense counsel's seven month representation, he met with the petitioner for only six minutes immediately prior to trial, as well as the fact that in the month prior to trial counsel had been suspended from the practice of law, and therefore did not appear at motion hearings or do any other work on the case. *See Id.* at 742-44.

Petitioner's case is distinguishable from the petitioner's circumstances in *Mitchell.* Unlike in *Mitchell*, petitioner's counsel was not suspended from the practice of law at any point during his representation of petitioner. Petitioner does not allege that counsel failed to meet with him at all, only that counsel failed to meet with him privately at the jail during a portion of the pre-trial period to discuss his case. Petitioner concedes that counsel did meet with him at the county jail prior to the evidentiary hearing and prior to the original trial date. Counsel provided a vigorous defense for petitioner at the preliminary examination and at

the evidentiary hearing. The Sixth Circuit in *Mitchell* itself distinguished that case from the circumstances present in petitioner's case, observing that if the issue had been only the failure of counsel to meet with petitioner and to prepare in the thirty-day period prior to trial, "it might have been proper to apply the *Strickland* analysis, for as *Bell* notes, counsel's failure in particular instances is evaluated under *Strickland*." *Mitchell*, 325 F. 3d at 742.

The *Mitchell* court also distinguished the Sixth Circuit's prior decision in *Dick v. Scroggy*, 882 F. 2d 192 (6th Cir.1989). *See Mitchell*, 352 F. 3d at 744. In *Dick*, the Sixth Circuit applied the *Strickland* test to a claim based on defense counsel's failure to consult with the habeas petitioner at all except for a 30-45 minute meeting the day before trial. *See Dick*, 882 F. 2d at 197. "In short, *Mitchell* is a case involving unique facts-a complete failure to consult combined with counsel's suspension from the practice of law immediately prior to trial-and its holding is cabined by those unique facts." *See Willis v. Lafler,* No. 05-74885, 2007 WL 3121542, * 29 (E.D. Mich. Oct. 24, 2007)(citing *Johnson v. Bradshaw*, 205 F. App'x. 426, 432-33 (6th Cir.2007)).

The Sixth Circuit, in fact, has applied the *Strickland* standard in evaluating and rejecting an ineffective assistance of counsel claim based upon counsel's failure to consult with a habeas petitioner. *See Bowling v. Parker,* 344 F. 3d 487, 506 (6th Cir. 2003)(finding no ineffective assistance of counsel even though

attorneys allegedly met with defendant for less than one hour in preparing defense because defendant failed to show prejudice, or how additional consultation with his attorneys could have altered outcome of trial). Accordingly, petitioner's ineffective assistance of counsel claim is subject to the *Strickland* standard and he would be required to show actual prejudice in order to obtain habeas relief.

Petitioner fails to allege or show prejudice from Mr. Siegel's failure to visit him in jail during a portion of the pre-trial period. Accordingly, he is not entitled to relief on his claim.

Petitioner also complains that he was denied the assistance of counsel during a critical stage of the proceedings when the prosecutor moved to amend the witness list to add Gary Ginther, a second fingerprint expert, as a witness. Petitioner argues that the prosecutor moved to add Mr. Ginther as a witness at the hearing on May 2, 2011, only after the trial judge discharged Mr. Siegel from representing petitioner.

The trial judge rejected petitioner's claim on post-conviction review, in part on the ground that although the judge had orally agreed to remove Mr. Siegel as counsel, courts in Michigan speak through their written orders not their oral pronouncements. Mr. Siegel was not formally removed as counsel until May 5, 2011 when the judge appointed new counsel. The judge concluded that petitioner was still represented by counsel at the time that the prosecutor moved to amend the

witness list. The judge further concluded that petitioner was not prejudiced by the endorsement of Ginther as a witness because Ginther testified at trial that the fingerprints taken from the outside yellow bag did not match petitioner's fingerprints. *People v. Smith,* No. 10-027124-FH, * 4-5 (Genesee Cty.Cir.Ct., Feb. 16, 2016).

In Michigan, a court generally speaks through its written judgments and orders rather than oral statements or written opinions. *People v. Jones*, 203 Mich. App. 74, 82, 512 N.W.2d 26, 30 (1993). Although the judge at the May 2, 2011 hearing orally agreed to replace Mr. Siegel, the judge did not formally do so until he issued a written order substituting counsel on May 5, 2011. At the time that the prosecution moved for the amendment of the witness list to add Mr. Ginther, petitioner was still formally represented by Mr. Siegel.

Moreover, assuming that petitioner was no longer represented by Mr. Siegel when the prosecutor moved to amend the witness list to add Mr. Ginther as a witness, petitioner would not be entitled to automatic reversal of his conviction. In "cases where the evil caused by a Sixth Amendment violation is limited to the erroneous admission of particular evidence at trial[,]" a harmless error analysis applies. *See Mitzel v. Tate,* 267 F. 3d 524, 534 (6th Cir. 2001)(quoting *Satterwhite v. Texas*, 486 U.S. 249, 257 (1988)). In this case, assuming that petitioner's Sixth Amendment rights were violated by the addition of Gary Ginther as a fingerprint

expert, habeas relief is unavailable unless there is more than a reasonable possibility that the addition of Ginther as a prosecution witness contributed to the jury's guilty verdict. *Id.* Ginther only offered exculpatory evidence at trial, namely, that petitioner's fingerprints did not match the fingerprints recovered from the outer yellow bag. By contrast, the evidence showed that petitioner admitted to police following the traffic stop that the cocaine recovered from the trunk of the vehicle that he was driving and was the sole occupant of belonged to him. Another fingerprint expert testified to recovering one of petitioner's fingerprints from one of the bags. In light of extensive incriminating evidence against petitioner, this Court does not believe that Ginther's exculpatory testimony contributed to the jury's decision to convict petitioner. *Id.* at 535.

Petitioner lastly argues that he was denied the effective assistance of trial counsel because Mr. Siegel failed to perfect his interlocutory appeal. As mentioned above, the trial court appointed Mr. Szabo to represent petitioner on the interlocutory appeal. Mr. Szabo re-filed the interlocutory appeal. *See* Application for Leave to Appeal, ECF 12-31, Pg ID 1845-1873. The Michigan Court of Appeals denied the appeal on the ground that petitioner failed to "persuade the Court of the need for immediate appellate review." *People v. Smith,* No. 304529 (Mich.Ct.App. June 30, 2011).

Petitioner's claim was mooted by the fact that replacement counsel was appointed to file an interlocutory appeal for petitioner and did so. The Michigan Court of Appeals reviewed petitioner's interlocutory appeal under the standard applicable for such appeals. Petitioner is thus unable to establish that he was prejudiced because of Mr. Siegel's failure to perfect his interlocutory appeal, in light of the fact that petitioner was appointed new counsel who ultimately filed an interlocutory appeal on his behalf. *See e.g. United States v. Skelton*, 68 F. App'x. 605, 607 (6th Cir. 2003)(defendant was not prejudiced by defense counsel's failure to file timely notice of appeal where defendant was granted an extension of time in which to file his notice of appeal); *United States v. Herrera-Rivera*, 25 F.3d 491, 497 (7th Cir. 1994)(defendant suffered no prejudice from counsel's failure to file timely notice of appeal when district court permitted out-of-time appeal); *Jones v. Carroll*, 388 F. Supp. 2d 413, 421 (D. Del. 2005)(State appellate court did not act contrary to or unreasonably apply clearly established federal law in determining that habeas petitioner was not prejudiced by counsel's failure to timely file direct appeal where trial court reinstated petitioner's sentence so that he might perfect a timely appeal). "Since no other Supreme Court precedent has expanded the *Evitts* rule to require a forum for ineffective assistance of appellate counsel claims when the appellant's case was actually heard and decided," as was the case here, petitioner is not entitled to habeas relief on this portion of his claim. *Wilson v.*

*Parker*, 515 F.3d 682, 708 (6th Cir. 2008), *as amended on denial of reh'g and reh'g en banc* (Feb. 25, 2009).

### C. Claim # 3. The continuance claim.

Petitioner next claims that the trial judge denied him due process when he refused to grant petitioner a continuance on June 14, 2011, the date of the re-scheduled trial.

On the first day of trial, the judge actually indicated that the trial needed to be put over one day because no jurors had been summoned due to an equipment failure in the jury coordinator's office. (Tr. 6/14/11, p. 3). Petitioner moved for an adjournment of the trial and a stay of proceedings because his re-filed interlocutory appeal was pending in the Michigan Court of Appeals. Petitioner also argued that his new trial counsel, David Clark, was unprepared to go to trial because he only had the trial court file since June 1, 2011, after receiving it from Mr. Szabo, who had needed it to prepare the interlocutory appeal. Petitioner claimed that Mr. Clark refused to listen to his input. (*Id.*, pp. 6-9). Petitioner also indicated that he had "spent two years preparing for this case." (*Id.*, p. 9). Petitioner also indicated "I have a thousand questions that have been written; and so, if we're going to proceed to trial, then I'll just go with self-representation. I will try this case myself. But I'm not going to trial inadequately prepared." (*Id.*, pp. 9-10). Mr. Clark indicated

that he had had the trial file for almost two weeks, had met with petitioner for two and a half hours on a Friday and again the day before trial. Mr. Clark indicated that he was prepared to go to trial and had reviewed all of the police reports, the preliminary examination transcript, plus all of the letters that petitioner had sent to Mr. Siegel. Mr. Clark indicated that because of all of this extensive information and preparation, it was "much easier to get up to speed." (*Id.*, pp. 14-15). The judge granted petitioner his request to represent himself with the assistance of Mr. Clark as advisory counsel. (*Id.*, pp. 15-16).

The judge rejected petitioner's continuance claim in his order denying the motion for relief from judgment:

> At the time Defendant argued this motion, he was being represented by Attorney Clark. Defendant also asserted his right to self-representation in his motion. Defendant's stated reason for requesting an adjournment is because he did not feel Attorney Clark had sufficient time to prepare for his trial in comparison to the two years Defendant had to prepare and analyze the case. Defendant's claim Attorney Clark was unable to prepare for trial is contradicted by Attorney Clark's own statement that he was in fact prepared to proceed to trial. On the other hand, if Defendant is claiming he did not have sufficient time to prepare, this is contradicted by Defendant's statement that he spent two years preparing for this case and further demonstrated by thorough motions filed and arguments made in pro per throughout pretrial hearings and trial. Defendant cannot demonstrate an abuse of discretion by the Court or that he was prejudiced by the Court's rulings.

*People v. Smith,* No. 10-027124-FH, * 5-6 (Genesee Cty.Cir.Ct., Feb. 16, 2016).

In criminal proceedings, a trial court's denial of a continuance rises to the level of a due process constitutional violation only when there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay. *See Burton v. Renico,* 391 F. 3d 764, 772 (6th Cir. 2004). In order to obtain habeas relief, a habeas petitioner must show that the denial of his request for a continuance resulted in actual prejudice to his defense. *Id.; See also Powell v. Collins,* 332 F. 3d 376, 396 (6th Cir. 2003). Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefitted the defense. *Powell,* 332 F. 3d at 396.

Petitioner is not entitled to habeas relief on his claim because other than conclusory assertions, he has failed to show that his substitute trial counsel, Mr. Clark, was not prepared to go to trial on June 14, 2011.

Petitioner is also not entitled to habeas relief on his claim that the trial judge should have granted petitioner a continuance after he chose to represent himself. At the June 14, 2011 hearing, Petitioner indicated that he had spent over two years preparing for the case and had written over one thousand questions. The judge's refusal to grant petitioner a continuance after allowing him to represent himself at trial did not prejudice petitioner because petitioner has failed to show that he was unprepared for trial or how additional time would have assisted his case. *See e.g.*

*United States v. Gooch*, 595 F. App'x. 524, 530 (6th Cir. 2014). Petitioner is not entitled to habeas relief on his third claim.

### D. Claim # 4. The missing transcript claim.

Petitioner next claims that his right to due process and a fair appeal was denied when the Genesee County Circuit Court clerk initially failed to provide petitioner's appellate counsel or the Michigan Court of Appeals with a transcript from the initial April 12, 2011 trial date and committed a fraud upon the court by falsifying the state court records to conceal from the parties or the Michigan Court of Appeals that there had actually been a hearing before the trial court on that date.

The trial judge denied the claim on petitioner's post-conviction motion for relief from judgment:

> As to Defendant's argument regarding the April 12, 2011 trial transcript, this Court notes that transcript was filed in the Court of Appeals on April 2, 2012, five months after the other trial transcripts were filed. Following two motions to remand to the trial court to address other issues, Defendant's Appellant Brief was not filed until February 7, 2013, well after the April 12, 2011 transcript was filed.
>
> *People v. Smith,* No. 10-027124-FH, * 5 (Genesee Cty.Cir.Ct., Feb. 16,

2016).

The Sixth Circuit has stated that "federal habeas relief based on a missing transcript will only be granted where the petitioner can show prejudice." *See Scott v. Elo*, 302 F. 3d 598, 604 (6th Cir. 2002)(citing *Bransford v. Brown*, 806 F. 2d 83,

86 (6th Cir. 1986)).  Petitioner was ultimately provided with a copy of the April 12, 2011 transcript prior to the date that his appellate counsel filed her appellate brief.  Petitioner's counsel had access to this transcript several months before filing the appellate court brief, petitioner is thus unable to establish that he was prejudiced by the court's delay in providing him with a copy of this transcript. Petitioner is not entitled to relief on his fourth claim.

### E.  Claim # 5.  The denial of self-representation claim.

Petitioner next claims that his Sixth Amendment right to self-representation was violated when his stand-by or advisory counsel, outside of petitioner's presence, discussed with the judge courtroom seating arrangements to conceal from the jury that petitioner was wearing leg restraints.

The Michigan Court of Appeals rejected petitioner's claim, finding that "standby counsel's brief discussion with the trial judge while neither the jury nor defendant were present did not interfere with defendant's right of self-representation because it did not "substantially interfere with any significant tactical decisions" or prevent defendant from speaking on his own behalf "on any matter of importance." *People v. Smith*, No. 305437, 2013 WL 5857567, at * 3 (Mich. Ct. App. Oct. 31, 2013)(*quoting McKaskle v. Wiggins*, 465 U.S. 168, 178 (1984).

The Michigan Court of Appeals then explained their rejection of petitioner's claim in greater detail:

> Hearings in the trial court on remand revealed that defendant was restrained while appearing in court as matter of the local sheriff's long-standing policy. Because defendant is a diabetic, he could not wear a hidden stun device that would have permitted defendant to freely move about the courtroom. Consequently, defendant was fitted with leg braces under his clothing that would lock in place if he fully extended his legs. While wearing the leg braces, defendant was required to remain seated at a table in the courtroom. The issue of whether it was necessary to restrain defendant while in the courtroom was never raised before or addressed by the trial court. Instead, standby counsel accepted that defendant would be restrained and attempted to minimize its effect on defendant's defense.
>
> The record discloses that on the first day of trial, before the venire was brought into the courtroom and before defendant arrived, a discussion occurred between standby counsel and the court regarding seating arrangements to conceal from the jury that defendant was wearing leg restraints. Counsel advised the court that defendant could not wear a stun device called "bandit" because of his medical condition and that defendant's medical condition would provide a somewhat truthful explanation for the jury as to why defendant would remain seated during the trial. This discussion commenced at 10:09 A.M. and concluded at 10:14 A.M., when the record was closed. Court reconvened at 10:28 A.M. in defendant's presence, and the trial court informed defendant that it did not want the jury to see all the security devices. Defendant indicated his agreement by responding, "Right," and "No, no. We've got it fixed." The trial court stated that if defendant remained seated in his current position, a juror might be able to see something when coming forward from the gallery. The court then suggested that "maybe we should start out with [defendant] on this side," but "we're thinking ... that during the witness questioning [defendant] should be on the end so ... [he] can see the witness more clearly." Defendant asked whether the jury might become "suspicious that everybody's getting up and standing up and I'm the only person that's not," to which standby counsel stated, "We'll fix that," suggesting where defendant could be seated. Standby counsel told

defendant that the jury would be informed defendant's medical condition required him to remain seated. Further, standby counsel told defendant that while seated he would "be able to look at the witness and talk with them and the jurors will not be able to see your feet" and that defendant would be "be able to look to the whole jury" and "be able to do everything except you won't be able to stand up." To all of this explanation, defendant responded: "Okay."

Standby counsel in the earlier colloquy out of defendant's presence had informed the court that defendant wanted counsel to conduct the jury selection process and to question any expert witnesses that appeared at trial. So, after discussing the seating arrangements, the trial court asked defendant about the division of duties between defendant and standby counsel, which defendant confirmed. The trial court next reminded defendant of his right to not incriminate himself and to exercise caution in asking witnesses questions. Defendant indicated he "absolutely" understood. The Court then asked, "Do we need to cover anything else?" Thereafter, the court asked whether the jury could be brought into the courtroom. Only the prosecutor responded with "yes."

On remand, the trial court addressed this issue as follows:

[Standby counsel's] discussion of logistical seating arrangements with the Court outside Defendant's presence was not a violation of self-representation. Standby counsel may assist in "help[ing] ensure the defendant's compliance with basic rules of courtroom protocol and procedure." No legal arguments were made at that time the seating arrangements were discussed and Defendant could have objected or raised the issue as to shackling when his seating arrangements and restraints were addressed in his presence. Once Defendant came into the courtroom and the Court addressed the seating arrangements, Defendant responded, "ok." Defendant was not prevented from objecting or addressing this issue further when he was brought before the Court.

*Id.,* at *5–6 (internal footnote omitted).

Criminal defendants have a constitutional right to conduct their own defense at trial, if they voluntarily and intelligently elect to do so. *Martinez v. Court of Appeal of California, Fourth Appellate Dist.,* 528 U.S. 152, 154 (2000); *Faretta v. California*, 422 U.S. 806, 807 (1975). The Supreme Court, however, has held that a court can appoint stand-by or advisory counsel to assist a defendant who wishes to represent himself or herself at trial without violating the defendant's Sixth Amendment right to self-representation. *See Martinez,* 528 U.S. at 162*; McKaskle v. Wiggins,* 465 U.S. 168, 176-77 (1984); *Faretta,* 422 U.S. at 834, n. 46. A criminal defendant's right to appear *pro se* does not absolutely bar standby counsel's unsolicited participation at a trial or at a hearing. *McKaskle,* 465 U.S. at 176.

In determining whether a defendant has been afforded his or her right to self-representation, "the primary focus must be on whether the defendant had a fair chance to present his case in his own way." *Id.,* at 177. The Supreme Court noted that "the objectives underlying the right to proceed *pro se* may be undermined by unsolicited and excessively intrusive participation by standby counsel." *Id.* The Sixth Amendment right to self-representation thus "must impose some limits on the extent of standby counsel's unsolicited participation." *Id.* The following limitations are thus placed on advisory or standby counsel:

First, the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury. This is the core of the *Faretta* right. If standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak instead of the defendant on any matter of importance, the *Faretta* right is eroded.

*Id.* at 178. "Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself." *Id.*

The Supreme Court in *McKaskle* noted that "participation by standby counsel outside the presence of the jury engages only the first of these two limitations." *McKaskle v. Wiggins*, 465 U.S. at 179. "A trial judge…must be considered capable of differentiating the claims presented by a *pro se* defendant from those presented by standby counsel." Thus, "the appearance of a *pro se* defendant's self-representation will not be unacceptably undermined by counsel's participation outside the presence of the jury." *Id.* Accordingly, a criminal defendant's right to self-representation is "adequately vindicated in proceedings outside the presence of the jury if the *pro se* defendant is allowed to address the court freely on his own behalf and if disagreements between counsel and the *pro se* defendant are resolved in the defendant's favor whenever the matter is one that would normally be left to the discretion of counsel." *Id.*, at 179.

In the present case, standby counsel's participation in the case occurred outside the presence of the jury. Counsel's participation was limited to discussing arranging the seating in the courtroom in such a way so that the jurors would not observe petitioner's restraints. When petitioner was brought back into the courtroom, the judge and counsel informed petitioner of their discussion and their idea concerning the seating arrangement. Petitioner was able to express his concerns about the seating arrangements. Standby counsel informed petitioner that he would remain seated throughout the trial and that the jury would be informed that petitioner's medical condition required him to remain seated. Petitioner was advised by standby counsel that even though he would remain seated he would "be able to look at the witness and talk with them and the jurors will not be able to see your feet" and that petitioner would be "be able to look to the whole jury" and "be able to do everything except you won't be able to stand up." To all of this explanation, petitioner responded: "Okay."

In the present case, petitioner's right to self-representation was not violated by counsel's brief discussion about the seating arrangements in petitioner's absence, because the discussion occurred outside the jury's presence and there is no showing that counsel's brief participation eroded petitioner's actual control of his defense. *United States v. Walsh*, 742 F.2d 1006, 1007 (6th Cir. 1984). Petitioner is not entitled to relief on his fifth claim.

**F.  Claims # 5 and # 6.  The shackling/ineffective assistance claim.**

Petitioner in his sixth claim alleges that he was denied a fair trial because he was shackled with leg restraints during his trial, of which one juror was aware, although she also stated in a post-verdict questionnaire that her awareness of the restraints did not influence her verdict.   As part of his fifth claim, petitioner contends that his standby counsel was ineffective for failing to object.

The Michigan Court of Appeals rejected petitioner's shackling claim, finding that any error was harmless in light of the overwhelming evidence of petitioner's guilt and the lack of any evidence that the jurors were influenced by the shackling. *People v. Smith,* 2013 WL 5857567, at *8.

The shackling of a defendant is harmless error if there is overwhelming evidence of the defendant's guilt. *See Lakin v. Stine,* 431 F.3d 959, 966 (6th Cir. 2005); *See also Robinson v. Gundy,* 174 F. App'x. 886, 893 (6th Cir. 2006).   The prejudice prong of the ineffective assistance analysis is essentially similar to the inquiry made in harmless-error review. See *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009).   In light of the overwhelming evidence of guilt, as mentioned above, any shackling of petitioner was harmless error.   Because the petitioner is unable to show that he was prejudiced by being shackled, standby counsel was not

ineffective in failing to object to petitioner's shackling. *See Taylor v. McKee*, 649 F. 3d 446, 451, n. 1 (6th Cir. 2011). Petitioner is not entitled to relief on his claim.

## G. Claim # 7. The Fourth Amendment claim.

Petitioner finally claims that the police traffic stop violated his Fourth Amendment rights. However, Petitioner's claim is non-cognizable. Federal habeas review of a petitioner's arrest or search by state police is barred where the state provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*, 213 F. 3d 947, 952 (6th Cir. 2000). For such an opportunity to exist, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F. 2d 522, 526 (6th Cir. 1982).

The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his or her claims, not whether he or she actually did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico,* 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003); *rev'd on other grds* 606 F.3d 867 (6th Cir. 2010). Under the dictates of *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim, "is simply irrelevant." *See Brown v. Berghuis,* 638 F. Supp, 2d 795, 812 (E.D. Mich. 2009). "The courts that have considered the matter 'have consistently held that an erroneous determination of a

habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar.'" *Id.* (quoting *Gilmore v. Marks*, 799 F. 2d 51, 57 (3rd Cir. 1986)).

In the present case, petitioner was able to present his Fourth Amendment claim to the state trial court in his pre-trial motion to suppress. Petitioner was later able to present his Fourth Amendment claim to the Michigan appellate courts. That is sufficient to preclude review of the claims on habeas review. *See Good v. Berghuis*, 729 F. 3d 636, 640 (6th Cir. 2013).

## IV. CONCLUSION

The Court will deny the petition for a writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must

issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *See Dell v. Straub,* 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002).

Petitioner is denied leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that leave to appeal *in forma pauperis* is **DENIED**.


Dated:      April 8, 2019

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 8, 2019, by electronic and/or ordinary mail.

s/Teresa McGovern
Case Manager